## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELVIN SCHWARTZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>SELECT INCOME REIT, DONNA D. FRAICHE, WILLIAM A. LAMKIN, JEFFREY P. SOMERS, ADAM D. PORTNOY, and DAVID M. BLACKMAN,<br><br>    Defendants. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Melvin Schwartz ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Select Income REIT ("Select Income" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on Select Income's website concerning the Company's public statements; and (d) review of other publicly available information concerning Select Income and the Defendants.

## NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public shareholders of Select Income against the Company's Board of Trustees (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Government Properties Income Trust ("Government Properties") (the "Proposed Transaction").

2.    On September 14, 2018, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement") with Government Properties, pursuant to which the Company's shareholders will receive 1.04 Government Properties common shares per Select Income common share (the "Merger Consideration").  Once the Proposed Transaction is consummated, Government Properties will change its ticker symbol to "OPI."  The special meeting of shareholders to vote on whether to approve the Proposed Transaction is currently scheduled to take place on December 20, 2018.

3.    On October 1, 2018 the Board authorized the filing of a materially incomplete and misleading registration statement on form S-4 by Government Properties with the SEC in connection with the Proposed Transaction (subsequently amended on October 26, 2018, November 9, 2018, and November 15, 2018).

4.    Thereafter, on November 16, 2018, the Company filed a joint materially incomplete and misleading proxy statement on Form DEFM14A with the SEC (the "Proxy Statement"), which omits material information regarding the Proposed Transaction.  Accordingly, Plaintiff alleges that Defendants have violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 in connection with the Proxy Statement.

5.      As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Additionally, the Company's common stock trades on the NASDAQ, which is headquartered in this District.

## THE PARTIES

9.      Plaintiff has been the owner of the common stock of Select Income since prior to the transaction herein complained of and continuously to date.

10.     Defendant Select Income is a Maryland corporation with its principal executive offices located at Two Newton Pl., 255 Washington Street, Suite 300, Newton, MA 02458.  The Company's stock trades on the NASDAQ under the ticker "SIR."

11.     Defendant Donna D. Fraiche ("Fraiche") is and has been a member of the Company's Board at all times during the relevant time period.

12.    Defendant William A. Lamkin ("Lamkin") is and has been a member of the Company's Board at all times during the relevant time period.

13.    Defendant Jeffrey P. Somers ("Somers") is and has been a member of the Company's Board at all times during the relevant time period.  Defendant Somers is also a member of the Government Properties Board of Trustees.

14.    Defendant Adam D. Portnoy ("Portnoy") is and has been a member of the Company's Board at all times during the relevant time period.  Defendant Portnoy is also a member of the Government Properties Board of Trustees.

15.    Defendant David M. Blackman ("Blackman") is and has been a member of the Company's Board at all times during the relevant time period.

16.    Defendants Fraiche, Lamkin, Somers, Portnoy, and Blackman are collectively referred to herein as the "Individual Defendants."

17.    The Individual Defendants, along with Defendant Select Income, are collectively referred to herein as "Defendants."

## CLASS ACTION ALLEGATIONS

18.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public stockholders of Select Income (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

19.    This action is properly maintainable as a class action because.

a.    The Class is so numerous that joinder of all members is impracticable. As of October 1, 2018, there were 89,550,528 shares of Select Income common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The

actual number of public stockholders of Select Income will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i.     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy Statement in violation of Section 14(a) of the Exchange Act;

ii.     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii.     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy Statement.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.    A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.    Select Income is a real estate investment trust, or REIT, which owns directly or indirectly through its subsidiaries, including its majority owned subsidiary, Industrial Logistics Properties Trust ("ILPT"), properties that are primarily leased to single tenants. As of September 30, 2018, the Company's consolidated portfolio included 368 buildings, leasable land parcels and easements with approximately 45.8 million rentable square feet located in 36 states. Select Income owned 99 of these buildings and leasable land parcels with approximately 16.5 million rentable square feet, which are primarily office buildings, and ILPT owned 269 of these buildings, leasable land parcels and easements with approximately 29.2 million rentable square feet, including 226 buildings, leasable land parcels and easements with approximately 16.8 million rentable square feet which are primarily leasable industrial and commercial lands located in Hawaii.

21.    ILPT was a wholly owned subsidiary of the Company until January 17, 2018, when it completed an initial public offering of its common shares and became a publicly traded REIT. Select Income remains ILPT's largest shareholder and, owning 45.0 million, or approximately 69.2%, of ILPT's outstanding common shares.

22.    RMR LL is the business and property manager of Select Income, Government Properties, and ILPT.

## Background of the Proposed Transaction

23.     On May 16, 2018, at a regular meeting of the Select Income Board held in person following Select Income's 2018 annual meeting of shareholders, the Board engaged in a discussion with the Company's management regarding the Company's financial and operating performance, including the performance of ILPT.   Management discussed with the Board a potential combination transaction between Select Income and Government Properties, which would be preceded by Government Properties' sale of all of the Select Income common shares that Government Properties owns and the Company's distribution to its shareholders of all of the ILPT Common Shares that Select Income owns. The Board discussed various potential benefits and challenges of such a transaction. In light of the Company's relationship and historical and continuing transactions with Government Properties and RMR LLC, including the following: that Government Properties was the Company's largest shareholder; that Defendant Portnoy is a managing trustee of both Government Properties and Select Income; that Defendant Blackman serves as president and chief executive officer of both Government Properties and Select Income and as a managing trustee of Select Income; that Defendant Somers serves as an independent trustee of both Government Properties and Select Income; and that RMR LLC provides management services to both Government Properties and Select Income, the Board determined that further consideration of a potential combination would be by a special committee, comprised solely of the disinterested, independent trustees of Select Income (the "Special Committee").

24.     Thereafter, on June 21, 2018, the Special Committee engaged UBS Securities LLC ("UBS") to serve as financial advisor.

25.     On July 16, 2018, the Board held a meeting in person, during which the representatives of UBS provided a preliminary overview of the potential combination transaction

between Select Income and Government Properties, including an overview of financial information for of the companies, and the Board discussed the potential benefits and risks of the transaction and other strategic opportunities the Company might consider.

26.     On July 26, 2018, the Special Committee met via teleconference with members of the Company's management. The Special Committee and members of management reviewed and discussed information regarding the five-year financial projections that had been provided to UBS and Government Properties' financial advisor Citigroup Global Markets Inc. ("Citi") by members of Select Income and Government Properties management, respectively, in connection with the potential transaction and the process by which each company's financial projections were prepared.

27.     The following day, on July 27, 2018 the Special Committee held a meeting via teleconference to receive a presentation prepared by UBS analyzing the potential combination of the two companies, including preliminary financial analyses of Select Income (on a standalone basis excluding ILPT) and Government Properties. The other members of the Board and members of the Company's management attended the initial part of this meeting to hear the UBS presentation. The Special Committee and the representatives of UBS discussed the range of exchange ratios implied by the UBS analysis and the financial effect on the Company's shareholders of the proposed transaction with Government Properties at various exchange ratios. The Special Committee authorized UBS to contact Citi and propose an exchange ratio of 0.9 of one Select Income Common Share for each Government Properties Common Share.

28.     On July 27, 2018, representatives of UBS and representatives of Citi discussed possible exchange ratios for the potential combination of the two companies during which UBS proposed an exchange ratio of 0.9 of one Select Income Common Share for each Government Properties Common Share, or 1.1 Government Properties Common Shares for each Select Income

Common Share.  Later that day, Citi contacted UBS with a counter proposal of 0.9 of one Government Properties share for each Select Income share.

29.    Thereafter, following a meeting of the Special Committee, on July 28, 2018, representatives of UBS contacted Citi, proposed an exchange ratio of 1.05 Government Properties common shares for each Select Income Common Share.

30.    Negotiations continued until August 1, 2018, when UBS contacted Citi to propose and exchange ratio of 1.04 Government Properties common shares for each Select Income common share, which was then accepted.

31.    Following further planning and negotiations, on September 14, 2018, UBS delivered its financial analyses and fairness opinion to the Board and Special Committee.

32.    That same day, representatives of both companies, together with their respective legal advisors, finalized the Merger Agreement and related agreements and documents. Late that evening, Select Income and Government Properties executed and delivered the Merger Agreement and the Registration Agreement.

**The Company Announces the Proposed Transaction**

33.    On September 17, 2018, the Company issued a joint press release with Government Properties announcing that the two companies had entered an agreement in connection with the Proposed Transaction:

34.    The September 17, 2018 press release stated, in pertinent part:

NEWTON, Mass.--(BUSINESS WIRE)--Government Properties Income Trust (Nasdaq:GOV) and Select Income REIT (Nasdaq:SIR) today announced that they have entered a definitive agreement to merge which will create a real estate investment trust, or REIT, focused on owning, operating and leasing office buildings primarily leased to single tenants and high credit quality tenants like government entities.

The surviving company in the merger will be GOV and it will change its name to Office Properties Income Trust, or OPI, upon closing the merger. OPI will continue to be managed by the operating subsidiary of The RMR Group Inc. (Nasdaq:RMR). OPI will be listed on the Nasdaq and the ticker symbol "OPI" has been reserved for the company's common shares.

*    *    *

The merger will be a stock for stock exchange whereby SIR shareholders will receive 1.04 shares of GOV for each common share of SIR based upon a fixed exchange ratio. Following the merger, GOV and SIR shareholders will own approximately 52% and 48% of OPI, respectively.

As a condition of the merger, GOV will sell all 24.9 million of the common shares it owns in SIR. Also as a condition of the merger, after receiving shareholder approval for the merger and prior to its closing, SIR will distribute as a special dividend all 45 million of the common shares it owns in ILPT to SIR shareholders. ILPT is a REIT that is focused on owning warehouse distribution and e-commerce fulfillment facilities throughout the United States. These actions will eliminate the cross ownership among GOV, SIR and ILPT.

SIR shareholders will receive approximately 0.502 shares of ILPT for every one share owned of SIR. Based upon closing prices on September 14, 2018, SIR shareholders will receive $11.69[3] per share from the ILPT share distribution and $17.57[4] per share in GOV for a total of $29.26 per share.

OPI expects to pay an annual dividend between $0.50 and $0.60 per share, which is based upon a target dividend payout ratio of 75% of projected cash available for distribution. There is no plan to change the current dividend at GOV or SIR prior to closing.

OPI expects to sell properties valued at up to $750 million to reduce leverage to a target debt to Adjusted EBITDA ratio of 6.0x to 6.5x within six months of the closing of the merger.

The transaction is expected to close in late 2018 or early 2019, subject to customary closing conditions, including GOV and SIR shareholder approval.

Citigroup Global Markets Inc. is acting as exclusive financial advisor to a special committee of GOV's Board of Trustees comprised of the disinterested Independent Trustees and Sullivan & Worcester LLP is acting as legal advisor to GOV in this transaction. UBS Investment Bank is acting as exclusive financial advisor to a special committee of SIR's Board of Trustees comprised of the disinterested Independent Trustees and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal advisor to SIR in this transaction.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

35.     On November 16, 2018, the Company filed the Proxy Statement with the SEC.  The

Proxy Statement recommends that the Company's stockholders vote in favor of the Proposed

Transaction.

36.     Defendants were obligated to carefully review the Proxy Statement prior to its filing

with the SEC and dissemination to the Company's shareholders to ensure that it did not contain

any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or

omits material information that is necessary for the Company's shareholders to make informed

decisions concerning whether to vote in favor of the Proposed Transaction, in violation of Sections

14(a) and 20(a) of the Exchange Act.

37.     Specifically, as set forth in more detail below, the Proxy Statement omits material

information or provides shareholders with materially misleading information regarding: (i) the

financial projections prepared by Select Income and Government Properties management relied

upon by UBS in conducting its financial analyses; (ii) the financial analyses and fairness opinion

of UBS; (iii) the background of the Proposed Transaction; and (iv) potential conflicts of interest

of UBS.

38.     It is imperative that the material information that has been omitted from the Proxy

Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote

so that they can properly exercise their corporate suffrage rights. For these reasons, and as set forth

in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and

20(a) of the Exchange Act, and Rule 14a-9 and Regulation G, 17 C.F.R. § 244.100.

39.     Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the

Proposed Transaction and taking any steps to consummate the Proposed Transaction unless and

until the material information discussed below is disclosed to Select Income stockholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**Material False and Misleading Statements or Material Misrepresentations
or Omissions Regarding Select Income and Government Properties' Financial Projections**

40.    The Proxy Statement omits material information concerning the Company's management's financial projections that were ultimately provided to and relied upon by UBS in rendering its financial analyses.

41.    With respect to UBS's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the Company's expected standalone unlevered free cash flows (excluding ILPT) from June 30, 2018 through the end of fiscal year 2021; (ii) the line items used to calculate the Company's unlevered free cash flows relied upon by UBS in rendering its analyses; and (iii) the definition of unlevered free cash flows.

42.    Next, the Proxy Statement fails to disclose key information concerning Government Properties management's financial projections that were ultimately provided to and relied upon by UBS in rendering its financial analyses.

43.    With respect to UBS's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) Government Properties' expected unlevered free cash flows (excluding a certain property) from June 30, 2018 through the end of fiscal year 2021; (ii) the unlevered free cash flows that the certain excluded property was forecast to generate through to the end of fiscal year 2026; (iii) the line items used to calculate Governments Properties' unlevered free cash flows relied upon by UBS in rendering its analyses; and (iv) the definition of unlevered free cash flows.

44.     Lastly, the Proxy Statement also omits material information concerning the pro forma combined company's financial projections relied upon by UBS in rendering its financial analyses.   In particular, the Proxy Statement fails to disclose: (i) the pro forma combined company's expected unlevered free cash flows (excluding a certain property of Government Properties) from June 30, 2018 through the end of fiscal year 2021; (ii) the line items used in calculating the pro forma combined company's unlevered free cash flows relied upon by UBS in rendering its analyses; and (iii) the definition of unlevered free cash flows.

45.     The omission of the above-referenced projections and metrics renders the financial projections included in the Proxy Statement materially incomplete and misleading.  If a proxy or registration statement soliciting a shareholder vote discloses financial projections and valuation information, such projections must be complete and accurate.  Disclosure of the above information would be material to shareholders in deciding whether to vote for or against the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding UBS's Opinion

46.     The Proxy Statement contains the financial analyses and opinion of UBS concerning the Proposed Transaction, but fails to provide material information concerning such.

47.     With respect to UBS's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used to determine the discount rate ranges; and (ii) the actual terminal values that were calculated.

48.     With respect to UBS's *Selected Public Companies Analyses* and *Selected Precedent Transactions Analysis*, the Proxy Statement does not disclose the individual multiples for each company and transaction used in UBS's analyses, nor does it disclose the benchmarking analyses in relation to the target companies analyzed by UBS in rendering its opinion.

49.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

50.    Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed so that shareholders can have all the material information available to cast their votes either for or against the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest of UBS

51.    The Proxy Statement does not disclose material information concerning potential conflicts of interest facing UBS.  The Proxy Statement notes the following concerning previous services rendered by UBS:

> In the past, UBS and its affiliates have provided investment banking services to SIR, GOV, ILPT and RMR Inc., and certain of their respective affiliates, unrelated to the proposed transaction, for which UBS and its affiliates have received or will receive compensation, including in the past two years having acted as (i) joint bookrunner on a senior unsecured notes offering of SIR in May 2017, (ii) joint lead arranger on a bridge facility and joint bookrunner on a concurrent follow-on equity offering of GOV in June 2017, (iii) joint bookrunner on an unsecured notes offering of GOV in July 2017, (iv) financial advisor and dealer manager on a rights offering of RMR Real Estate Income Fund, a closed-end management investment company advised by a subsidiary of RMR Inc., in September 2017, (v) joint bookrunner on a credit facility of ILPT in December 2017 and (vi) lead left bookrunner on ILPT's initial public offering in January 2018. In addition, UBS or an affiliate is a participant in credit facilities of SIR, GOV and ILPT for which it received and

continues to receive fees and interest payments. In addition, in the future UBS may provide investment banking services to SIR, GOV, ILPT and RMR Inc. unrelated to the proposed transaction for which UBS may receive compensation.

52.    The Proxy Statement, however, fails to disclose what fees UBS has received in providing the above listed services.

53.    The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to vote in favor of the Proposed Transaction without proper disclosures.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Background of the Proposed Transaction**

54.    Finally, the Proxy Statement fails to disclose material information concerning the sales process leading up to the Proposed Transaction.

55.    While the Proxy Statement notes that "the SIR special committee authorized UBS to contact Citi and propose an exchange ratio of 0.9 of one SIR Common Share for each GOV Common Share," but fails to disclose whether the members of Select Income's Board that were not members of the Special Committee were aware of the exchange ratio ranges included in a preliminary financial analyses of Select Income performed by UBS.

56.    The omission of the above materials renders the Proxy Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to tender their shares in favor of the Proposed Transaction without proper disclosures.  The disclosure of this information is crucial to a shareholder's informed vote on the Proposed Transaction, as it would allow proper assessment of whether the Proposed Transaction is indeed the best opportunity available to the Company.  As such, shareholders are threatened irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

59.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60.     The Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

61.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of

their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

62.    The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

63.    The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

64.    The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

65.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

66.     Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

67.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68.     The Individual Defendants acted as controlling persons of Select Income within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Select Income, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

69.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

70.     In particular, each of the Individual Defendants had direct and supervisory

involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

71.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

72.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

73.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

74.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to its Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: November 19, 2018                      Respectfully submitted,

                                        By: _____
                                        Joshua M. Lifshitz
                                        Email: jml@jlclasslaw.com
                                        **LIFSHITZ & MILLER LLP**
                                        821 Franklin Avenue, Suite 209
                                        Garden City, New York 11530
                                        Telephone: (516) 493-9780
                                        Facsimile: (516) 280-7376

                                        *Attorneys for Plaintiff*

## Sworn Certification Pursuant to Federal Securities Laws

| | | |
|---|---|---|
| Name* | Melvin | Schwartz |
| Company Name or Ticker Symbol* | | |

I hereby certify as follows:

1. Plaintiff has reviewed the complaint and authorized the commencement of a lead plaintiff motion and/or filing of a complaint on plaintiff's behalf.
2. I did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.
3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.
4. To the best of my current knowledge, the transactions set forth in Exhibit A represent all of my transactions in the Company's securities during the Class Period as specified in the Complaint.
5. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve or served as a representative party on behalf of a Class under the federal securities laws. (If you have sought to serve or have served as a representative party on behalf of a Class, please click here for the correct Certification)
6. I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the Class as ordered or approved by the Court.
7. I declare, under penalty of perjury, that the foregoing is true and correct.

Digital signature*

*Melvin Schwartz*

Signature Date*  |  11/14/2018

Signed pursuant to the Uniform Electronic Transactions Act as adopted by the various states and territories in the United States.

I am a current shareholder of the Company*    ⦿ Yes        ◯ No

### EXHIBIT A

| Date (MM/DD/YY) | Ticker Symbol | S/P* | Number of Shares | Price Per Share |
|---|---|---|---|---|
| 10/02/2012 | SIR | P | 1000 | 24.7559 |
| 09/02/2014 | SIR | P | 1000 | 26.3459 |
| 01/06/2015 | SIR | P | 1000 | 25.8359 |

**REDACTED**